SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Joseph Benge, | No. CV 05-0106-PHX-DGC (CRP) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, et al. | |
| Defendants. | |

Plaintiff Robert Joseph Benge filed this civil rights action under 42 U.S.C. § 1983 against Joseph Arpaio, Maricopa County Sheriff and Maricopa County Detectives Sanchez and Doe. (Doc. #1.) Doe has not been served. Sanchez moves to dismiss on the grounds that (1) Plaintiff failed to exhaust his administrative remedies, (2) Sanchez is entitled to qualified immunity, and (3) Plaintiff did not suffer a physical injury. (Doc. #34.) The matter is fully briefed.[1] (Doc. ##35, 37.) The Court will grant the motion and dismiss the case.

**I.    Background**

Plaintiff's Complaint raised three counts. The Court dismissed Counts II and III and directed Sanchez to answer Count I, but did not order service on Doe. (Doc. #5.) In Count I, Plaintiff alleged that while at the Maricopa County Madison Street Jail he was subjected to a threat to his safety by Sanchez and Doe. Specifically, he claimed that in November 2003, while his pod was on lockdown, Officer Patterson gave Plaintiff a bottle of contact

---

[1] Although Plaintiff filed his Complaint *pro se*, he is now represented by counsel. (Doc. #21.)

solution. Shortly thereafter, Detectives Sanchez and Doe asked to see Plaintiff, who went to meet them. Defendants told Plaintiff to get all of his contact solution. Plaintiff alleged that inmates had taken the bottle that Patterson gave Plaintiff, but Plaintiff handed Defendants another bottle of contact solution. Defendants examined it and asked where the "weed" was, telling Plaintiff that Defendants had created a decoy with balloons of parsley. Plaintiff told Defendants that the decoy had put him in danger, that he could not go back to general population, and he wanted to be in segregation. They refused Plaintiff's request, walked him back to his pod, and told Patterson to take everybody off lockdown. Plaintiff alleged that his reputation suffered and that he was harassed and then assaulted on two separate dates.

## II.     Exhaustion of Administrative Remedies

### A.     Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

1 **B.     Parties' Contentions**

2       Sanchez contends that Plaintiff failed to exhaust his administrative remedies as
3 required by the PLRA, 42 U.S.C. § 1997e(a). (Doc. #34 at 2-4.) In support, Sanchez submits
4 the affidavit of Susan Fisher, a Sergeant assigned to the Inmate Hearing Unit. (Id., Fisher
5 Aff. ¶ 1.) Fisher attests that her duties include receipt, processing, tracking, and storage of
6 inmate grievances. (Id. ¶ 3.) The grievance procedure at the jail is a three-tiered system that
7 includes: (1) the initial grievance and decision by a Bureau Hearing Officer; (2) the
8 Institutional appeal; and (3) the External appeal. (Id. ¶ 5 & Ex. A.) She asserts that the jail's
9 grievance policy does not restrict the type of issues that an inmate may grieve. (Id. ¶ 4.) She
10 further attests that according to the sheriff's office records, Plaintiff filed approximately 41
11 grievances relating to jail conditions but did not file a grievance relating to the issue of
12 Sanchez jeopardizing his safety. (Id. ¶ 8.) Also attached to the motion is a copy of the
13 Inmate Grievance Procedure, Policy DJ-3, and a sample Inmate Grievance Form. (Id., Exs.
14 A, C.)

15      Plaintiff argues that Defendant fails to show that an administrative remedy was
16 available; he asserts that the agency must show that it had authority to provide "some
17 redress" for the alleged wrong, citing <u>Booth,</u> 532 U.S. at 736. (Doc. #35 at 4.) He argues
18 that he was assaulted and sustained injuries and "[t]here was no administrative remedy that
19 could redress this harm. After the injuries were sustained, there was no longer a threat to his
20 safety so that [plaintiff] had no remedy through the Madison Street Jail grievance system."
21 (Id.) Thus, Plaintiff had no duty to exhaust.

22      Sanchez replies that Plaintiff does not dispute that he filed no grievance relating to this
23 incident – he simply ignored the grievance process. (Doc. #37 at 2.) He argues that it is
24 untrue that there was no remedy through the grievance system. (Id. at 3.) Sanchez asserts
25 that Plaintiff could have requested segregation from the general population and, if denied,
26 could have filed a grievance, even before the first confrontation occurred. (Id.) Sanchez also
27 argues that Plaintiff could have filed a grievance after the first confrontation and possibly
28 prevented the second alleged incident. (Id. at 3-4.) Finally, Sanchez notes that in all of the

1  cases relied on by Plaintiff, the inmate had filed an initial grievance. (Id. at 5.)

2  **C.  Analysis**

3  In Booth, the Supreme Court reasoned that in enacting the PLRA, "Congress meant
4  to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief
5  and the administrative remedies possible," noting that one exhausts processes, not forms of
6  relief. 532 U.S. at 739. The Court held that an inmate must exhaust irrespective of the forms
7  of relief sought and offered through the administrative process and specifically held that an
8  inmate seeking only money damages must complete a prison administrative system that could
9  provide some sort of relief but no money. Id.

10  Booth also made clear that exhaustion is not required when no pertinent relief can be
11  obtained through the internal process. Id. at 736. In Brown, 422 F.3d 926, the Ninth Circuit
12  considered two cases where prisoners had used the California Department of Corrections
13  grievance process by filing appeals, but did not pursue their appeals to the final level after
14  receiving responses at the intermediate level. The court noted that the purpose of the PLRA
15  exhaustion requirement is to afford prison officials "time and opportunity to address
16  complaints internally before allowing the initiation of a federal case." Id. at 936 (citing
17  Porter, 534 U.S. at 525). Thus, the court held that a prisoner need not continue to exhaust
18  additional levels of review if he has either received all "available" remedies at an
19  intermediate level of review or "been reliably informed by an administrator that no remedies
20  are available." Id. at 935. A defendant must prove the availability of a remedy. Relevant
21  evidence of an available remedy includes regulations or official directives describing the
22  scope of the administrative review process, documentary or testimonial evidence from
23  relevant prison officials, and information provided to the prisoner. See id. at 937. To
24  determine whether remedies were available, a court examines prison officials' responses to
25  the inmate grievances and the actual grievance procedures. See id. at 937-43.

26  The Ninth Circuit noted that its position was consistent with the positions of the
27  Second, Seventh, and Tenth Circuits, citing Abney v. McGinnis, 380 F.3d 663 (2d Cir.
28  2004); Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002); and Ross v. Co. of Bernalillio,

1 365 F.3d 1181, 1187 (10th Cir. 2004) *abrogated on other grounds by* Jones, 127 S. Ct. at
2 925. Id. at 935.  In determining if further administrative relief was unavailable, these courts
3 examined, in light of the actual grievance procedures, the responses of the prison officials
4 to the grievances filed.  Abney, 380 F. 3d at 668-69 (once inmate received a favorable ruling
5 on his request for properly fitted orthopedic footwear, and prison officials repeatedly failed
6 to implement the favorable rulings, there was no further possibility of some relief); Dixon,
7 291 F. 3d at 490-91 (noting that although it was problematic to require a prisoner who has
8 won his grievance seeking a transfer to further appeal to the Director when the transfer did
9 not take place, §1997e required the inmate to file such an appeal because there was still the
10 possibility of some relief); Ross, 365 F. 3d at 1187 (holding that inmate complaining of
11 dangerous conditions in the shower due to lack of shower mats had exhausted remedies
12 where prison officials responded by providing mats and there were no other remedies
13 available).

14 Sanchez offers evidence that (1) the jail has a grievance procedure that does not limit
15 the issues that may be grieved, (2) Plaintiff filed no grievance on the issue of the threat to his
16 safety, and (3) Plaintiff was aware of the grievance process, having filed numerous
17 grievances in the past.  Plaintiff does not dispute these assertions; he merely alleges that no
18 remedy was available because he had already been assaulted.  But this is insufficient under
19 Brown to avoid the exhaustion requirement, and such an interpretation would negate the
20 PLRA's purpose to allow officials time and opportunity to address the complaint prior to the
21 filing of a lawsuit.  See Porter, 534 U.S. at 525.  Because Plaintiff never initiated the
22 grievance process, he cannot show that he received all "available" remedies at an
23 intermediate level of review or that he was "reliably informed by an administrator that no
24 remedies are available."  See Brown, 422 F. 3d at 935.  Sanchez's motion will be granted and
25 the claim dismissed without prejudice.

26 Because the Court has granted the motion to dismiss on the grounds of failure to
27 exhaust, it need not consider the additional grounds raised by Sanchez.  There are no
28 remaining claims, and the Court will dismiss the action.

**IT IS ORDERED:**

(1)   Defendant Sanchez's Motion to Dismiss (Doc. #34) is **granted,** and the claim is dismissed without prejudice for failure to exhaust remedies.

(2)   This action is dismissed, and the Clerk of Court must enter judgment accordingly.

DATED this 4th day of March, 2008.

_____
David G. Campbell
United States District Judge